# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Nathan Christopher Braun, | Civ. No. 20-333 (DSD/BRT) |
| Plaintiff, | |
| v. | **ORDER AND REPORT**<br>**AND RECOMMENDATION** |
| Tim Walz, Commission of Corrections, Nate Knutson, Chris Pawelk, Sherlinda Wheeler, Byron Matthews, Natalie Leseman, Sharon Henry, and Jason R. Hills, | |
| Defendants. | |

---

Nathan Christopher Braun, *pro se* Plaintiff.

Corinne Wright-MacLeod, Esq., Minnesota Attorney General's Office, counsel for Defendants.

---

BECKY R. THORSON, United States Magistrate Judge.

This action is before the Court on (1) Plaintiff Nathan Christopher Braun's request that certain materials be filed under seal ("Sealing Motion") (Doc. No. 45, Sealing Mot.); (2) the Motion to Dismiss filed by Defendants Tim Walz, Commission of Corrections, Nate Knutson, Chris Pawelk, Sherlinda Wheeler, Byron Matthews, Natalie Leseman, Sharon Henry, and Jason R. Hills (Doc. No. 39); (3) Braun's filing titled "Response to Defendants' Motion to Dismiss in the Negative and Affidavits with Exhibits to Show Compelling Reason for Additional Defendants and Amended Complaint" ("Response")

(Doc. No. 50); and (4) Braun's "Motion to Produce to the Court" ("Motion to Produce") (Doc. No. 85).[1] For the following reasons, the Court denies the Response to the extent it presents a motion to amend the Complaint, denies the Sealing Motion, denies the Motion to Produce, and recommends granting in part and denying in part the Motion to Dismiss.

## I.     BACKGROUND

### A.     Complaint

Braun filed his Complaint on January 24, 2020. (Doc. No. 1, Compl.)[2] Braun is presently incarcerated at the Minnesota Correctional Facility–Oak Park Heights ("MCF-OPH"), and his suit concerns treatment received there. (*See id.* at 1 (referring to various Defendants affiliated with MCF-OPH).) Braun names as Defendants (1) Tim Walz, the governor of Minnesota; (2) Paul Schnell, commissioner of the Minnesota Department of Corrections ("MNDOC");[3] (3) Nate Knutson, an assistant commissioner for MNDOC;

---

[1]     Based on statements made in the Motion to Dismiss that Braun does not contest, the Court refers to Defendant Leseman with the first name of Natalie and to Defendant Henry with the first name of Sharon. (Doc. No. 39 at 1 n.1.)

[2]     Citations to materials filed with the Court use the page numbers provided by the Court's CM/ECF filing system.

[3]     The Court observes that there appears to be some confusion in Braun's defendant list. The Complaint names "Commission of Corrections" as a defendant. (*See* Compl. 1.) But the Complaint nowhere alleges conduct by the commission itself. At numerous points, however, the Complaint does reference a *Commissioner* of Corrections in a manner that suggest that this person is supposed to be a defendant. (*See, e.g., id.* at 6 ("The Commissioner [o]f Corrections . . . [is] being held in their official capacity as a supervisory role . . . . The Commissioner of Corrections is responsible for the actions of all employees and facilities employed under his charge . . . .").) The Motion to Dismiss assumes that Braun means for Paul Schnell, the present commissioner of corrections, to be a defendant. (*See, e.g.*, Doc. No. 39 at 1 n.1 (noting that Schnell is commissioner); *id.* at 2 (referring to Schnell as defendant).) In responding to the Motion, Braun specifically

(4) Chris Pawelk, the assistant warden of operations at MCF-OPH; (5) Sherlinda

Wheeler, the assistant warden of administration at MCF-OPH; (6) Byron Matthews,

MCF-OPH's "captain"; (7) Natalie Leseman, MCF-OPH's "mail room lead worker";

(8) Sharon Henry, a mailroom worker at MFC-OPH; and (9) Jason R. Hills, MCF-OPH's

"mail room supervisor." (*Id.* (capitalization amended).) Braun is suing all Defendants in

their individual and official capacities. (*See id.* at 1–2.)

The Complaint concerns three separate problems Braun alleges that he has had

with receiving publications while at MCF-OPH. (*Id.* at 1–4.) Braun contends that

Defendants' alleged conduct violates the First, Fifth, and Fourteenth Amendments as well

as MNDOC policy. (*See id.* at 4–6.) The Complaint states that Braun now seeks "up to

$50,000" in damages. (*See id.* at 6.) The Court will set forth the facts concerning each of

these incidents in turn.

### i.    Allegations Concerning "The Abolitionist"

Braun alleges that in August 2019, Henry prevented him from receiving "a

publication from Critical Resistance Publishing Collective called 'The Abolitionist,'"

asserting that the publication presented a security risk. (*Id.* at 1.) Following MNDOC

policy,[4] Braun submitted an appeal to Leseman; under MNDOC policy "and the law set

---

refers to Schnell as a defendant at least once. (*See, e.g.*, Doc. No. 52, Aff. on Presumption
on Immunity and Liability 4 ("Immunity/Liability Aff.").) Given all this, the Court
construes the Complaint as naming Paul Schnell as a defendant rather than the
"Commission of Corrections."

[4]    Braun refers to "DOC Policy 302.020 Procedure N." Defendants provide a copy of
MNDOC Policy No. 302.020 in materials submitted with the Motion to Dismiss. (*See*
Doc. No. 41-1.)

forth for censorship," Braun claims, Leseman was to "forward the appeal to the Correspondence Review Authority ['CRA']." (*Id.* at 2.) Instead, Braun alleges, Leseman "answered the appeal herself." (*Id.*)

Because Leseman "refus[ed] to follow DOC policy," Braun alleges, he "was forced to submit the same appeal" to Hills. (*Id.*) Braun claims that, like Leseman, Hills was supposed to forward Braun's appeal to the CRA and was required to submit an incident report concerning Leseman's "violation of policy." (*Id.*) Hills instead "answered the appeal himself" and "failed to submit an incident report." (*Id.*)

Braun next claims that because Hills "refus[ed] to follow DOC policy," Braun had to send the same appeal directly to the CRA, consisting of Pawelk, Wheeler, and Matthews. (*Id.*) The CRA denied Braun's appeal. (*See id.*) Braun contends that this denial violated MNDOC "policy" and "laws set forth by the courts for censorship"—in particular, by "merely stat[ing] vague answers." (*Id.*) Among the purportedly vague statements the CRA made were (1) "We have read the material and determined the content should be denied for violating MN DOC Division Directive 301.030 Contraband," and (2) "One of the articles advocates for organized disturbances within prison walls and activities in violation of facility rules." (*Id.* at 3.)

Braun next appealed the CRA's decision to Knutson, and Braun claims that Knutson's response (a denial) also "failed to follow DOC policy and the laws set forth by the courts for censorship." (*Id.*) Braun claims Knutson informed him that "[t]his newspaper contains graphic depiction[s] of violence that pose a threat to facility security in violation of DOC Division Directive 301.030 Contraband." (*Id.*)

4

### ii.    Allegations Concerning Publication from MIM (Prisons)

At some unspecified time, Braun alleges that he also attempted to receive a "publication from MIM (Prisons)," but was denied access to the publication. (*Id.*)[5] Braun alleges that he appealed this denial of access, and that Defendants Henry, Leseman, Hills, Pawelk, Wheeler, Matthews and Knutson again violated "both DOC Policy and the laws set forth by the courts regarding censorship of publications and mail." (*Id.*) Specifically, Braun alleges that all these Defendants except Knutson took the same actions with respect to this publication as they did with "The Abolitionist." (*See id.*) Braun further alleges that when he appealed the CRA's denial, this time Knutson failed to respond at all. (*See id.* at 3–4.)

### iii.    Allegations Concerning Assorted Other Publications

Finally, Braun also alleges that Defendants Henry, Leseman, and Hills "violated policy and the law by failing to notify both the plaintiff and the publisher of several mailed publications" sent to Braun by "Critical Resistance Publishing Collective, MIM Distributors, and News & Letters." (*Id.* at 4.) According to Braun, these Defendants "did not provide the plaintiff or the publishers of any notice of censorship" with respect to these publications, and "sent [them] back to the publishers with absolutely no reason for the mail being returned." (*Id.*)

---

[5]    Because Braun states that the "The Abolitionist" is "a publication from the Critical Resistance Publishing Collective," while the publication at issue here is "from MIM (Prisons)," (*compare* Compl. 2 *with id.* at 3), the Court construes Braun's allegations here as referring to a distinct incident.

### B.    Subsequent Procedural History

On July 17, 2020, Braun filed the Sealing Motion in this matter and cross-filed it in three other matters in this District. (*See* Sealing Mot. 1.) The exact materials Braun wishes sealed are not specified, but he appears to refer to three documents filed on the same day as the Sealing Motion. (*See* Doc. No. 46 (attaching three exhibits).)

Defendants filed the instant Motion to Dismiss on July 20, 2020. (Doc. No. 39, Mot. to Dismiss.) Braun responded to the Motion to Dismiss on August 10, 2020. (*See* Doc. No. 50, Resp. to Defs.' Mot. to Dismiss in the Negative and Affs. with Exs. to Show Compelling Reason for Additional Defs. and Am. Compl. ("Resp.").) The Response is a two-page document referring the Court to several other filings. (*See id.*) These include an "Affidavit on Governmental Immunity," a two-part "Affidavit on Presumption on Immunity and Liability," and an "Affidavit on Presumption of Retaliation." (*See* Doc. Nos. 51–53 (hereafter "Governmental-Immunity Affidavit," "Immunity-Presumption Affidavit," and "Retaliation-Presumption Affidavit").) The Response states that Braun "offer[s] the attached Affidavits and Exhibits as [a] response" to the Motion to Dismiss. (Resp. 2.) But Braun also states that he wants the affidavits and exhibits to amend the Complaint:

> The following Affidavits shall be taken, along with the corresponding Exhibits, as supplemental to the original Complaint in such a way that the essential substance contained within each Affidavit, along with the Corresponding Exhibits, shall be considered to be an Amended Complaint, keeping the original Complaint intent within it by placing such at the forefront, and the Affidavits, and the corresponding Exhibits following afterwards.

*Id.*

Braun also filed approximately 350 pages of exhibits alongside his Response and Affidavits. (*See generally* Doc. Nos. 54–68.) Two weeks later, Braun submitted an additional "Affidavit on Discriminatory Censorship," (Doc. No. 72 ("Discriminatory-Censorship Affidavit")), and about fifty more pages of exhibits (Doc. Nos. 73–75). Braun does not state whether he views this material as a further response to the Motion to Dismiss, a further amendment to the Complaint, or both. Defendants submitted their Reply in support of the Motion to Dismiss on September 3, 2020. (*See* Doc. No. 79, Defs.' Reply Mem. of Law in Supp. of Mot. to Dismiss ("Reply") 7.) The Motion to Dismiss is thus fully briefed and ready for consideration.[6]

Finally, on January 11, 2021, Braun filed a Discovery Motion seeking an order from the Court directing Defendants to produce documents Braun alleges they have in their possession.

## II.     ANALYSIS

### A.     Motion to Amend

The Court first addresses the Response's request that the Court treat Braun's various affidavits and exhibits as supplementing or amending the original Complaint. First, the Court notes that "'it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745

---

[6]     This Court notes that during this time, Braun also filed three motions seeking preliminary injunctive relief, all of which were denied by the Court. (*See* Doc. Nos. 13, 14, 15, 17, 22, 36.)

F.2d 1101, 1107 (7th Cir. 1984)); *see also, e.g.*, *Blair-Hanson v. Johnson*, No. 19-CV-2195 (NEB/TNL), 2020 WL 6121269, at *6 (D. Minn. May 22, 2020), *report and recommendation adopted*, 2020 WL 5105775 (D. Minn. Aug. 31, 2020). The Court therefore liberally construes Braun's request as a separate motion to amend.

Local Rule 15.1 specifies what plaintiffs must do to amend a complaint:

(a) **Amended Pleadings.** Unless the court orders otherwise, any amended pleading must be complete in itself and must not incorporate by reference any prior pleading.

(b) **Motions to Amend.** Any motion to amend a pleading must be accompanied by: (1) a copy of the proposed amended pleading, and (2) a version of the proposed amended pleading that shows—through redlining, underlining, strikeouts, or other similarly effective typographic methods—how the proposed amended pleading differs from the operative pleading. If the court grants the motion, the moving party must file and serve the amended pleading.

D. Minn. LR 15.1. Here, the various materials that Braun submitted with the Response do not constitute anything like an amended pleading "complete in itself," nor do they provide any way for Defendants (or the Court) to compare Braun's hypothesized new complaint with the original. "All civil litigants are required to follow applicable procedural rules." *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 914 (8th Cir. 2002) (citation omitted); *see also Lindsey v. Moser*, No. 15-CV-2091 (SRN/SER), 2016 WL 4046719, at *3 (D. Minn. July 28, 2016) ("All litigants, even those who are pro se, are required to follow the applicable procedural rules.").

In a filing titled "Question to Be Certified by the Court"—effectively a sureply opposing the Motion to Dismiss—Braun claims that he has been deprived of legal documents and so should not be expected to comply with the rules. (*See* Cert. Req. 1.)

8

This Court observes that Braun has so far tenaciously litigated this matter and has filed a large number of documents during the life of this case while also pursuing at least three other lawsuits in this District. This conduct is frankly at odds with Braun's claim that he lacks the ability to draft and file an amended complaint, and it is not the Court's role to stitch together his disparate filings in this matter into an intelligible whole. Accordingly, because he failed to comply with the relevant rules, Braun's motion to amend is denied without prejudice. The Court notes, however, that it *will* consider the arguments in Braun's various affidavits as they relate to the Motion to Dismiss.

### B.    Motion to Dismiss

Defendants move to dismiss the Complaint in this matter, arguing that (1) they are immune from suit under the doctrines of sovereign immunity and qualified immunity; (2) under 42 U.S.C. § 1983, Braun cannot bring damages claims against Defendants in their official capacities; and (3) Braun has failed to adequately plead causes of action under either the First Amendment or the Fourteenth Amendment's Due Process Clause. (*See* Doc. No. 40, Mem. of Law in Supp. of Defs.' Mot to Dismiss ("Mem. in Supp.") 6–13.) Braun opposes Defendants' motion. (*See* Resp.) For the reasons that follow, this Court recommends that Defendants' Motion to Dismiss be granted in part and denied in part.

### 1.    Standard of Review

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a complaint for lack of subject-matter jurisdiction. A party contesting subject-matter jurisdiction may mount either a facial challenge or a factual challenge to a court's

jurisdiction. *See Osborn v. United States*, 918 F.2d 724, 729–30 & n.6 (8th Cir. 1990).

On a facial attack, the court limits its consideration to the allegations of the complaint. *Id.*

at 729 & n.6. On a factual attack, the court may consider matters outside the pleadings

without converting the motion to one for summary judgment. *Id.* "[N]o presumptive

truthfulness attaches to the plaintiff's allegations, and the existence of disputed material

facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact

exist." *Id.* at 730. In determining whether the plaintiff has sustained that burden, a court

has the duty to construe liberally a pro se party's pleadings. *Estelle v. Gamble*, 429 U.S.

97, 106 (1976). However, "the Court may not supply additional facts or fashion a legal

theory that assumes facts that have not been pleaded." *Benjamin v. Experian Info. Sols.,*

*Inc.*, No. 14-cv-810 (JRT/JJG), 2014 WL 3509044, at *2 (D. Minn. July 15, 2014) (citing

*Stone v. Harry*, 364 F.3d 912, 914–15 (8th Cir. 2004)).

Rule 8(a)(2) requires only a "short and plain statement of the claim showing that

the pleader is entitled to relief." However, the "plaintiff's obligation to provide the

'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

550 U.S. at 570). Under the current pleading standard, "[a] claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555. Thus, the Court in examining a motion to dismiss must determine whether the plaintiff raises a plausible claim of entitlement to relief after assuming all factual allegations in the complaint to be true. *Id.* at 558. Pro se complaints, however, "must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014). A motion to dismiss for failure to state a claim under Rule 12(b)(6) is the "appropriate vehicle" for dismissal based on res judicata. *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018).

### 2.    Sovereign Immunity

This Court first turns to Defendants' jurisdictional argument that the Eleventh Amendment bars Braun's official-capacity claims against Defendants for damages. (*See* Mem. in Supp. 6–8.) Under the Eleventh Amendment, "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. Notwithstanding the phrase "of another State," courts have held that "'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.'" *Fryberger v. Univ. of Ark.*, 889 F.3d 471, 473 (8th Cir. 2018) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)).

Under the Eleventh Amendment, suits against a state agency are functionally suits against the state itself. *Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429

(1997) (citing cases); *Hanks v. Hills*, 373 F. Supp. 3d 1230, 1232 (D. Minn. 2017) (citing

*Monroe v. Ark. St. Univ.*, 495 F.3d 591, 594 (8th Cir. 2007)), *report and recommendation*

*adopted*, 2017 WL 10243525 (D. Minn. Nov. 27, 2017). Similarly, official-capacity

§ 1983 claims against state employees are also treated as claims against the state itself.

*See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their

official capacity . . . should be treated as suits against the State." (citing *Kentucky v.*

*Graham*, 473 U.S. 159, 166 (1985))); *Lewis v. City of Burnsville*, No. 19-CV-1117

(ECT/BRT), 2019 WL 5623512, at *3 (D. Minn. Oct. 31, 2019) (same). Thus, Braun's

official-capacity claims against the individual Defendants are in fact claims against the

State of Minnesota, and there is no indication that Minnesota has waived its Eleventh

Amendment immunity or otherwise consented in any way to Braun's suit.[7]

    Braun musters three arguments against this conclusion, but they do not persuade.

First, the Governmental-Immunity Affidavit argues that under *Federal Housing*

*Administration v. Burr*, 309 U.S. 242 (1940), Governor Walz, the State of Minnesota, the

MNDOC, and MNDOC employees can all be sued in their official capacity and "each has

waived governmental immunity." (Governmental-Immunity Aff. 1.) This is incorrect. In

*Burr*, the issue was whether the Federal Housing Administration could be subject to

---

[7]    Under *Ex parte Young*, 209 U.S. 123 (1908), and related cases, Eleventh
Amendment sovereign immunity does not bar official-capacity claims against state
officials for prospective injunctive relief. *See, e.g.*, *Frew ex rel. Frew v. Hawkins*, 540
U.S. 431, 437 (2004) (citing *Ex parte Young*); *Prouty v. Dep't of Human Servs.*, No. 20-
CV-0928 (WMW/DTS), 2020 WL 6888103, at *5 (D. Minn. Oct. 20, 2020) (same),
*report and recommendation adopted*, 2020 WL 6875423 (D. Minn. Nov. 23, 2020). Here,
however, the Complaint's request for relief seeks only monetary damages.

garnishment in state courts for money it owed to an employee. *See Burr*, 309 U.S. at 243. Based on "sue and be sued" language in the FHA's authorizing statute, the U.S. Supreme Court concluded that the agency was subject to such proceedings. *See, e.g.*, *id.* at 244–46. But this has nothing to do with Braun's present lawsuit; among other things, *Burr* concerns a federal agency, not a state subject to Eleventh Amendment immunity, and *Burr* involves a plainly worded waiver of governmental immunity that has no parallel in this action. *Burr* thus does nothing to suggest that the State of Minnesota has in any way waived its Eleventh Amendment immunity for this suit's purposes.

Second, Braun argues that under various old authorities, "the United States is a Bankrupt Corporation as a matter of Law, it is considered a Civilly Dead Person," and furthermore, that "similarly, the Corporate State of Minnesota is also a Bankrupt sub-corporation of the Bankrupt Corporate United States, . . . which also makes the State of Minnesota a Civilly Dead Person as a matter of Law and Fact, including all its agents and agencies." (Immunity-Presumption Aff. 1.) This argument is frivolous, but even if it were not, Braun does not explain how it would undercut Minnesota's Eleventh Amendment immunity.

Finally, Braun argues that *Nieting v. Blondell*, 235 N.W.2d 597 (Minn. 1975), "abolished the State of Minnesota's tort immunity." (Immunity-Presumption Aff. 1–2.) He then argues that "by definition, a constitutional tort is a violation of one's constitutional rights," and so Minnesota—and its employees—have no immunity here. (*Id.*) Again, this is incorrect. In *Nieting*, the Minnesota Supreme Court did indeed end the State of Minnesota's tort immunity (at least for claims arising after August 1, 1976). 235

13

N.W.2d at 603. But that case concerned tort claims brought against the State of Minnesota in Minnesota state courts. *See, e.g.*, *id.* at 599 (discussing procedural history). Eleventh Amendment sovereign immunity concerns a different question: the extent to which plaintiffs can bring claims against states in federal court. Nothing in *Nieting* undercuts Minnesota's sovereign immunity.[8]

To conclude, because Minnesota has not waived its Eleventh Amendment immunity in this matter, this Court concludes that Eleventh Amendment sovereign immunity bars Braun's official-capacity claims against Defendants. This Court therefore recommends that the Motion to Dismiss be granted in part, and those claims be dismissed without prejudice for lack of jurisdiction.[9]

### 3.    Failure to State a Claim

This Court next turns to Defendants' argument that Braun has failed to state a claim based on Defendants' alleged failure to follow MNDOC policies and procedures,

---

[8]    Even if the Minnesota Supreme Court's decision in *Nieting* did somehow reflect a "waiver" of sovereign immunity, "a State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n.9 (1984) (citing *Fla. Dep't of Health v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981) (per curiam)); *see also Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (making same point (citing *Smith v. Reeves*, 178 U.S. 436, 441–445 (1900))).

[9]    Defendants also argue that Braun "cannot maintain a [§ 1983] cause of action for damages against Defendants in their official capacities." (Mem. in Supp. 8.) This point is distinct from Defendants' sovereign-immunity argument; it instead concerns § 1983's scope. Because the Court concludes that it lacks jurisdiction over Braun's official-capacity damages claims, it need not reach Defendants' argument about whether § 1983 permits such claims.

the First Amendment, or for a violation of Braun's right to Due Process. This Court will address each of these arguments in turn.

### i.    MNDOC Policies and Procedures

First, Defendants draw the Court's attention to the fact that many of Braun's allegations assert that various Defendants "failed to follow DOC policies and procedures." (Mem. in Supp. 8–9.) Defendants argue that to the extent Braun wishes to pursue a claim for these alleged violations, he may not do so. Braun's response is unclear, though his responses to the Motion to Dismiss stress that prison staff did in fact violate applicable MNDOC policy. (*See, e.g.*, Immunity-Presumption Aff. 3–4, 8–9.)

The key question here is whether Defendants can be liable to Braun merely for violating MNDOC policy. This Court concludes that they cannot. With respect to liability under 42 U.S.C. § 1983, no such liability exists based merely on prison officials' failure to follow applicable prison policies. *See Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997); *Baasi v. Fabian*, No. 09-CV-0781 (PAM/RLE), 2010 WL 924384, at *2 (D. Minn. Mar. 11, 2010), *aff'd*, 391 F. App'x 571 (8th Cir. 2010). Braun cites to no other federal-law source of liability for state officials violating a state's own corrections policies, and this Court is aware of none.[10]

---

[10]    This leaves the possibility of state-law liability for policy violations. Again, this Court is unaware of any Minnesota authority suggesting that violations of MNDOC policy give rise to a civil cause of action. This Court observes that *Becker v. Mayo Foundation*, 737 N.W.2d 200, 207 (Minn. 2007), states that "[i]f a claim does not exist at common law, Minnesota courts do not recognize a private cause of action unless the legislature has provided for one expressly in statute or by clear implication." Here, there is no indication that (1) the common law recognized claims by prisoners for violations of prison policies, (2) the Minnesota legislature has expressly provided state prisoners a

This Court finds that mere violations of MNDOC policies, without more, do not give rise to civil liability. This Court therefore recommends dismissing the Complaint to the extent it presses claims based on violations of MNDOC policy (independent from any constitutional violations associated with those violations).

## ii.    First Amendment Claims

The Court next turns to Defendants' argument that Braun failed to state a claim for violations of his First Amendment rights based on Defendants' application of the MNDOC's mail policy. (*See* Mem. in Supp. 9–11.) In *Turner v. Safley*, 482 U.S. 78 (1997), the United States Supreme Court considered the claims of convicted prisoners challenging prison regulations issued by a state corrections department. *Id.* at 81. The Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. To determine validity, courts consider four factors: (1) whether "there [is] a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact [that] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are "obvious, easy

---

private right of action for such violations, or (3) any provision of Minnesota state law (or MNDOC policies themselves) imply that state prisoners are meant to be able to bring suit based on violations of corrections policy.

alternatives" to the challenged regulation. *Id.* at 90–91 (internal quotation marks and citations omitted).

The problem this Court confronts in applying *Turner* here is that the inquiry is fact-intensive. Courts in this District addressing First Amendment questions by applying *Turner*—or the "modified *Turner*" standard for rules governing civilly committed individuals—have repeatedly denied motions to dismiss (or relevant portions thereof), indicating that the factual development needed to assess the *Turner* factors cannot be done in a motion to dismiss. *See, e.g.*, *Mason v. Johnston*, No. 19-CV-2597 (JRT/KMM), 2020 WL 7133201, at *12 (D. Minn. July 27, 2020), *report and recommendation adopted*, 2020 WL 5835223 (D. Minn. Sept. 30, 2020); *Jannetta v. Minnesota Dep't of Human Servs.*, No. 19-CV-2622 (ECT/TNL), 2020 WL 3405430, at *5 (D. Minn. June 1, 2020), *report and recommendation adopted*, 2020 WL 3402418 (D. Minn. June 19, 2020); *Manos v. Fed. Bureau of Prisons*, No. 18-CV-0427 (PJS/HB), 2020 WL 589441, at *5 (D. Minn. Jan. 14, 2020), *report and recommendation adopted*, 2020 WL 586769 (D. Minn. Feb. 6, 2020); *Wagner v. Harpstead*, No. 18-CV-3429 (MJD/HB), 2019 WL 6918360, at *3 (D. Minn. Nov. 12, 2019), *report and recommendation adopted*, 2019 WL 6910138 (D. Minn. Dec. 19, 2019); *Ivey v. Johnston*, 18-CV-1429 (PAM/DTS), 2019 WL 3987583, at *2 (D. Minn. Aug. 23, 2019); *Meyer v. Stacken*, No. 17-CV-1761 (ADM/KMM), 2019 WL 4675353, at *4 (D. Minn. July 25, 2019), *report and recommendation adopted*, 2019 WL 4673941 (D. Minn. Sept. 25, 2019).

This issue is particularly acute here because no party has presented the Court with the publications and materials involved in Braun's claims. Discovery is necessary to

allow Defendants an opportunity to explain why barring Braun from receiving the specific materials at issue is "reasonably related to legitimate penological interests." This Court therefore recommends denying the Motion to Dismiss to the extent it seeks dismissal of Braun's First Amendment claims.[11]

### iii.    Fourteenth Amendment Due-Process Claims

This Court now turns to Braun's due-process claims. Braun alleges that Defendants violated his rights under the Fifth and Fourteenth Amendments. (*See* Compl. 6.) As a threshold matter, this Court notes that to the extent Braun seeks to bring such claims under the Fifth Amendment, those claims fail. The Fifth Amendment's Due Process Clause applies only to conduct by the federal government, while the Fourteenth Amendment's parallel clause applies to state conduct. *See, e.g.*, *Dusenbery v. United States*, 534 U.S. 161, 167 (2002); *see also LaBeau v. Sorenson*, No. 18-CV-0651 (NEB/LIB), 2019 WL 7284109, at *5 (D. Minn. Dec. 27, 2019). Here, Braun does not allege any federal involvement in the at-issue conduct, and therefore fails to state a Fifth Amendment claim. Accordingly, this Court recommends dismissing such claims with prejudice.

---

[11]    At various points in the Complaint and his response Affidavits, Braun refers to several cases and suggests that they provide the governing law concerning his First Amendment claims. (*See, e.g.*, Compl. 5; Immunity-Presumption Aff. 4.) The cases he cites that bind this Court are *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Procunier v. Martinez*, 416 U.S. 396 (1974) (overruled in part by *Thornburgh*); *Murphy v. Mo. Dep't of Corrs.*, 372 F.3d 979 (8th Cir. 2004); and *Murphy v. Mo. Dep't of Corrs.*, 814 F.2d 1252 (8th Cir. 1987). Having reviewed the cases, the Court concludes that nothing in them suggests that *Turner* does not apply here.

This Court also observes that the Complaint does not specify what type of due-process claim Braun seeks to bring—that is, whether his claim sounds in procedural due process or substantive due process. *See, e.g.*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (noting distinction); *Mulla v. Univ. of Minn.*, No. 20-CV-931 (SRN/LIB), 2020 WL 5249586, at *4 (D. Minn. Sept. 3, 2020) (same). Given the Court's obligation to construe pro se complaints liberally, *see, e.g.*, *Topchian*, 760 F.3d at 849, this Court construes the Complaint as invoking both procedural due process and substantive due process, analyzing each in turn.

### a.   Procedural Due Process

To allege a procedural due process violation, a plaintiff must allege "a deprivation of life, liberty, or property without sufficient process." *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 994 (8th Cir. 2016) (citing *Clark v. Kansas City Mo. Sch. Dist.*, 375 F.3d 698, 701 (8th Cir. 2004)); *see also Sorenson v. Minn. Dep't of Human Servs.*, No. 20-CV-0501 (NEB/LIB), 2020 WL 7481756, at *12 (D. Minn. Nov. 13, 2020) (reciting similar elements (citing *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006)), *report and recommendation adopted*, 2020 WL 7425233 (D. Minn. Dec. 18, 2020). When considering what constitutes "sufficient process," courts "balance three factors": "[1] the nature and weight of the private interest affected by the challenged official action; [2] the risk of an erroneous deprivation of such interest as a result of the summary procedures used; and [3] the governmental function involved and state interests served by such procedures, as well as the administrative and fiscal burdens, if any, that would result from the substitute procedures sought." *Hughes*, 840 F.3d at 994 (quoting *Booker v. City of St.*

*Paul*, 762 F.3d 730, 734 (8th Cir. 2014)); *Sorenson*, 2020 WL 7481756, at *12 (reciting similar factors (citing *Senty-Haugen*, 462 F.3d at 886)).

Defendants argue that Braun has failed as to the first element, specifically that Braun "fails to allege what protected liberty interest . . . is implicated by Defendants' conduct." (Mem. in Supp. 11.) Braun does not specifically address Defendants' argument here, though he does suggest that he had a property interest in the materials he tried to receive. (*See* Immunity-Presumption Aff. 13 (referring to "deprival of property, that was rightfully mine, without actual [d]ue [p]rocess").)

In *Procunier v. Martinez*, a class of prison inmates challenged various regulations implemented by the California Department of Corrections; among other things, the regulations severely restricted inmates' personal correspondence. 416 U.S. at 398–99. After a district court granted the inmates' summary-judgment motion and "enjoin[ed] continued enforcement of the rules in question," the defendants (including the director of the state's department of corrections) appealed directly to the U.S. Supreme Court. *Id.* at 398. Much of *Procunier* concerns First Amendment issues, *see id.* at 406–14, but *Procunier* also has a due-process hook because the Court also "agree[d] with the District Court that the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." 416 U.S. at 417. As part of this discussion, the Court specifically stated that –

> The interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a "liberty" interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of

> imprisonment. As such, it is protected from arbitrary governmental
> invasion.

*Id.* at 418 (citing *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Perry v. Sindermann*, 408 U.S. 593 (1972)).

*Procunier* concerned prisoner correspondence, but the Eighth Circuit has indicated that the *Procunier* liberty interest goes beyond letters. In *Bonner v. Outlaw*, the Eighth Circuit considered, among other things, a procedural-due-process claim from a prisoner denied certain packages from his attorney. 552 F.3d 673, 675 (8th Cir. 2009). The Eighth Circuit made clear that an inmate's right to receive all sorts of materials is a proper liberty interest:

> In *Procunier* . . . , the Supreme Court held "[t]he interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." As such, "the decision to censor or withhold delivery of a particular letter must be accompanied by minimum procedural safeguards." The Court approved a requirement that an inmate be notified of the rejection and have a reasonable opportunity to protest the decision, concluding such requirements "do not appear to be unduly burdensome."

> Outlaw argues *Procunier* is inapplicable because its holding applies to "letters," not to the "packages" rejected in this case. Outlaw's argument fails, however, because the reasoning of *Procunier* applies to all forms of correspondence addressed to an inmate. It is the inmate's interest in "uncensored communication" that is the liberty interest protected by the due process clause, regardless of whether that communication occurs in the form of a letter, package, newspaper, magazine, etc. Thus, whenever prison officials restrict that right by rejecting the communication, they must provide minimum procedural safeguards, which include notice to an inmate that the correspondence was rejected. Although *Procunier* discusses letters, that is because letters were simply the form of correspondence at issue in that specific case. Nothing about the reasoning of *Procunier* justifies treating packages differently than letters for purposes of the notice that

21

should be given an inmate when correspondence addressed to that inmate is rejected. Courts, including this one, have routinely rejected the distinction Outlaw advances here and have applied *Procunier* to numerous forms of correspondence other than letters.

*Id.* at 676–77 (citations omitted).

This Court finds that such a liberty interest extends to the materials that Braun discusses in the Complaint. Further, since *Outlaw*, district courts in this Circuit have held that inmates' interest in receiving magazines and periodicals is a Fourteenth Amendment liberty interest. *See, e.g.*, *Smith v. Roy*, No. 10-CV-2193 (JRT/TNL), 2012 WL 1004985, at *15 (D. Minn. Jan. 25, 2012), *report and recommendation adopted*, 2012 WL 1004982 (D. Minn. Mar. 26, 2012); *McKenzie v. Fabian*, No. 07-CV-4441 (PAM/JSM), 2009 WL 2982641, at *15 (D. Minn. Sept. 11, 2009); *Hodgson v. Fabian*, 08-CV-5120 (JNE/SRN), 2009 WL 2972862, at *9 (D. Minn. Sept. 10, 2009), *aff'd*, 378 F. App'x 592 (8th Cir. 2010). Accordingly, this Court recommends denying the Motion to Dismiss as to Braun's procedural due-process claims.[12]

### b.     Substantive Due Process

The Court next turns to substantive due process. In general, to allege a violation of substantive due process, a plaintiff must allege "'that a fundamental right was violated and that [the defendant's] conduct shocks the conscience.'" *Stockley v. Joyce*, 963 F.3d 809, 818 (8th Cir. 2020) (quoting *Folkerts v. City of Waverly*, 707 F.3d 975, 980 (8th Cir.

---

[12]     Because this Court concludes that the Complaint adequately alleges a liberty interest sufficient to state a procedural due-process claim, this Court declines to address Braun's contention that Defendants infringed on a property interest.

2013) (alterations in original)). Defendants argue that Braun has failed to adequately plead either prong of this test.

This Court finds that Braun has failed to plead facts describing conduct that shocks the conscience. "Conduct that 'shocks the conscience' requires more than showing 'that the government official's behavior meets the lowest common denominator of customary tort liability . . . . Only the most severe violations of individual rights that result from the brutal and inhumane abuse of official power rise to this level.'" *Id.* (quoting *White v. Smith*, 696 F.3d 740, 757–58 (8th Cir. 2012)). Numerous cases in the Eighth Circuit have previously concluded that when prisoners face difficulties in receiving packages and media they seek, the underlying conduct is not conscience-shocking. *See, e.g.*, *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998); *Wickner v. McComb*, No. 09-CV-1219 (DWF/JJK), 2010 WL 3396918, at *9 (D. Minn. July 23, 2010), *report and recommendation adopted*, 2010 WL 3396921 (D. Minn. Aug. 23, 2010); *Proctor v. Smallwood*, No. 06-CV-0075 (WRW), 2009 WL 792559, at *3 (E.D. Ark. Mar. 23, 2009).

In light of this precedent, this Court finds that the conduct alleged in the Complaint—Defendants' decisions not to allow Braun to receive certain magazines, and allegedly failing to notify Braun of some of those decisions—was not conscience-shocking conduct. This Court therefore recommends that the Motion to Dismiss be granted in part, and that Braun's claims of violations of his substantive-due-process rights under the Fourteenth Amendment be dismissed.

### 4.     Qualified immunity

Finally, this Court turns to Defendants' argument that Braun's Complaint should be dismissed because Defendants are entitled to qualified immunity.[13] Where an official violates a plaintiff's constitutional rights, but does so based on a reasonable misunderstanding of relevant law, then so-called qualified immunity protects him or her from liability for damages. *See, e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866–67 (2017) (discussing qualified immunity and citing cases); *see also Mason*, 2020 WL 7133201, at *16 (same). When presented with a qualified-immunity defense within a Rule 12(b)(6) motion to dismiss, a court must determine whether the "plaintiff plead[ed] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Wood v. Moss*, 572 U.S. 744, 757 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation marks omitted)).

Here, the first prong eliminates any need to consider qualified immunity for Braun's asserted claims under the Fifth Amendment and his claims invoking Fourteenth Amendment substantive due process because, as explained above, Braun fails to state a

---

[13]     Defendants appear to treat the qualified-immunity issue as bearing on this Court's jurisdiction. (*See* Mem. in Supp. 6–8.) This Court disagrees. A district court within the Eighth Circuit considered this question, and its "independent review of the relevant case law demonstrates that courts within the Eighth Circuit do not treat qualified immunity as a subject-matter jurisdiction issue, but rather as a Rule 12(b)(6) issue." *See Rohlfing v. City of St. Charles*, No. 12-CV-1670 (SPM), 2013 WL 1789269, at *2 (E.D. Mo. Apr. 26, 2013) (citing cases); *cf. Ulrich v. Pope Cty.*, No. 12-CV-0148 (DWF/LIB), 2012 WL 2603210, at *2 (D. Minn. July 5, 2012) (assessing qualified immunity as Rule 12(b)(6) issue), *aff'd*, 715 F.3d 1054 (8th Cir. 2013).

claim that officials violated these constitutional rights. This leaves open, however, whether qualified immunity applies to Braun's remaining constitutional claims under the First Amendment and his Fourteenth Amendment procedural due-process claims. The Court therefore turns to the second prong of the qualified-immunity test.

A right is clearly established when its "contours were sufficiently definite that any reasonable official in [the defendant's] shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate." *City & Cnty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (citation omitted; cleaned up). The relevant inquiry is "whether it would have been clear to a reasonable officer in the [defendant's] position that their conduct was unlawful in the situation they confronted." *Wood*, 572 U.S. at 745 (quotation and brackets omitted). In other words, "[t]he salient question is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quotations and alterations omitted). This standard "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions" by protecting "all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 536 U.S. at 743 (quotation omitted).

With these standards in mind, this Court first considers Braun's First Amendment claims, and immediately runs into the same obstacle that it faced when considering the *Turner* test above: the absence of a factual record means that the Court cannot be certain at this time whether Defendants' judgments complied with the *Turner* standard. The

Court concludes that the same lack of a factual record precludes a finding that if any Defendants made an incorrect decision, it was nonetheless reasonable. The Court therefore finds that a qualified immunity analysis at this juncture is premature, and recommends that Braun's First Amendment claims not be dismissed based on qualified immunity at this time. This conclusion in no way bars Defendants from reasserting a qualified-immunity defense at summary judgment.

Turning to Braun's Fourteenth Amendment procedural-due-process claims, however, the Court finds that qualified immunity should apply to certain of Braun's allegations. Again, the Complaint concerns three separate episodes wherein Braun alleges that he was improperly denied receipt of publications while at MCF-OPH. (Compl. 1–4.) Braun's narrative concerning the first two of these—"the Abolitionist" and the "publication from MIM (Prisons)"—describes a process that gave Braun notice that he was being denied certain publications and that afforded him numerous opportunities to object to and appeal those denials. Based on the Complaint, there is no evidence that Defendants' conduct in these instances violated any procedural-due-process right of Braun's that was clearly established.

For Braun's claims regarding the third category of publications, however, the situation is different. There, Braun alleges that he was not given any notice by prison officials before they decided to withhold from him certain publications. Those allegations, if true, present conduct that appears to run flatly contrary to the standards set by *Procunier* and *Outlaw*, as discussed above. At a minimum, those cases suggest that prisoners have a clearly established right to notice when prison officials decide to deny

them mailed materials, as well as a right to protest the decision. *Procunier*, 416 U.S. at 418–19; *Outlaw*, 552 F.3d at 676–77. As a result, this Court cannot conclude at this time that qualified immunity applies to this aspect of Braun's Fourteenth Amendment procedural-due-process claims.

In summary, this Court finds that Defendants' are entitled to qualified immunity only with regard to Braun's procedural-due-process claims concerning Defendants' conduct as to "The Abolitionist" and the publication from MIM (Prisons). As a result, this Court recommends the Motion to Dismiss be granted in part, and recommends that those claims be dismissed.

## 5.    Conclusion

For the foregoing reasons, this Court recommends that Defendants' Motion to Dismiss be granted in part and denied in part. Applying these recommendations to Braun's claims, this Court recommends that the following categories of claims be dismissed: (1) claims based on alleged violations of MNDOC policies and procedures; (2) Fifth Amendment due-process claims; (3) Fourteenth Amendment substantive due-process claims; (4) those procedural due-process claims that relate to Braun's first two sets of allegations regarding "the Abolitionist" and the "publication from MIM (Prisons)"; and (5) all of Braun's claims against Defendants in their official capacity. If this Court's recommendations are adopted, only Braun's First Amendment claims and his procedural due-process claim relating to his allegation that Defendants Henry, Leseman, and Hills "violated policy and the law by failing to notify both the plaintiff and the

publisher of several mailed publications" sent to Braun would remain. (Compl. 4.) Those claims would be against Defendants only in their individual capacity.

## C.    Sealing Motion

Next, the Court addresses Braun's Sealing Motion. The exact materials that Braun wants sealed are not entirely clear; but the Court construes the Sealing Motion as referring to three documents that the Court received on the same day that Braun submitted the Sealing Motion. (*See* Sealing Mot.; Doc. No. 46 (attaching three exhibits).) Braun claims that these materials "reveal the illegal activities of Defendants in regards to [himself] and [his] personal property." (Sealing Mot. 1.) He suggests that if it were publicly known that he filed the relevant materials, "retaliation in the form of permanent loss of property would surely ensue, or possibly injury to [Braun's] person." (*Id.*) For the reasons that follow, the motion is denied.

A default presumption exists that "judicial records" should be publicly accessible:

> There is a common-law right of access to judicial records. [The U.S. Supreme Court has] explained that "the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents," but that "the right to inspect and copy judicial records is not absolute." This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings, and "to keep a watchful eye on the workings of public agencies." It also provides a measure of accountability to the public at large, which pays for the courts.

*IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) (citations omitted); *see also id.* ("We agree with the other circuits that the common-law right of access applies to judicial records in civil proceedings."). But this right of access is not unlimited:

> Where the common-law right of access is implicated, the court must
> consider the degree to which sealing a judicial record would interfere with
> the interests served by the common-law right of access and balance that
> interference against the salutary interests served by maintaining
> confidentiality of the information sought to be sealed.

*Id.* at 1223 (citing *Webster Groves Sch. Dist. v. Pulitzer Publ'g Co.*, 898 F.2d 1371, 1376

(8th Cir. 1990)). This requires a court to consider "the role of the material at issue in the

exercise of Article III judicial power and resultant value of such information to those

monitoring the federal courts." *Id.* at 1224; *see also Krueger v. Ameriprise Fin., Inc.*,

No. 11-CV-2781 (SRN/JSM), 2014 WL 12597948, at *8–9 & n.8 (D. Minn. Oct. 14,

2014) (discussing information submitted in connection with a motion for summary

judgment and its impact on the adjudicatory process, as opposed to matters that are

"related . . . only tangentially to the underlying merits"). A party seeking to have judicial

records sealed must show that there is a "compelling reason" to overcome the public's

right to access." *See, e.g.*, *Hudock v. LG Elecs. USA, Inc.*, No. 16-CV-1220 (JRT/KMM),

2020 WL 2848180, at *2 (D. Minn. June 2, 2020).

Aside from generalized assertions that his property is in danger or that he might be

harmed, (*see, e.g.*, Sealing Mot. 1), Braun has not explained why this Court should seal

any portion of these records, much less seal them in their entirety. This is particularly

problematic because the decision of whether to seal a document "is fact-specific and must

be supported by a fact-specific analysis." *Inline Packaging, LLC v. Graphic Packaging

Int'l, Inc.*, No. 15-CV-3183 (ADM/LIB), 2018 WL 10440721, at *6 (D. Minn. Mar. 30,

2018) (citing cases). The most Braun does is allude to threats, but these assertions are

speculative at best and fail to provide the sort of "compelling reason" needed to

overcome the public's right of access to judicial records. *Cf. Bollom v. Brunswick Corp.*, No. 18-CV-3105 (MJD/HB), 2020 WL 6161262, at *2 (D. Minn. Sept. 23, 2020) (discussing standards for placing judicial records under seal (citing *Hudock v. LG Elecs. USA, Inc.*, No. 16-CV-1220 (JRT/KMM), 2020 WL 2848180, at *1 (D. Minn. June 2, 2020)). Accordingly, the Sealing Motion is denied.

### D.    Motion to Produce

Finally, this Court addresses Braun's Motion to Produce. Therein, Braun moves the Court for an order directing Defendants to produce items "in which they allegedly found 'nudity in violation of MNDOC policy' so that it may properly be introduced as Evidence/Exhibits in this case." (Mot. to Produce 1.) This motion is functionally a motion to compel discovery. The Court finds that such a motion is premature at this time because Braun has not yet served this discovery request on Defendants and provided them an opportunity to either produce or object thereto. Accordingly, Braun's Motion to Produce is denied.

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY ORDERED** that:

1.    Plaintiff Nathan Christopher Braun's filing titled "Response to Defendants' Motion to Dismiss in the Negative and Affidavits with Exhibits to Show Compelling Reason for Additional Defendants and Amended Complaint" (**Doc. No. 50**) is **DENIED** to the extent it comprises a motion to amend the Complaint in this matter;

2.      Braun's request that certain materials be filed under seal (**Doc. No. 45**) is **DENIED**; and

3.      Braun's "Motion to Produce to the Court" (**Doc. No. 85**) is **DENIED**.


## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Defendants' Motion to Dismiss (**Doc. No. 39**) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1.      The Complaint's official-capacity claims be **DISMISSED** without prejudice;

2.      The Complaint's claims based solely on alleged violations of MNDOC policy—independent from any related constitutional violations associated with those violations—be **DISMISSED** with prejudice;

3.      The Complaint's claims based on violations of the Fifth Amendment be **DISMISSED** with prejudice;

4.      The Complaint's claims based on violations of Fourteenth Amendment substantive due process be **DISMISSED** without prejudice.

5.      The Complaint's claims based on violations Fourteenth Amendment procedural due process, as applied to Braun's allegations about "The Abolitionist" and an unspecified publication from MIM (Prisons), be **DISMISSED** without prejudice.

6.      The Motion to Dismiss otherwise be **DENIED**.

31

Date: January 27, 2021                    <u>s/ Becky R. Thorson</u>
                                          BECKY R. THORSON
                                          United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within **14 days** after being served a copy" of the Report and Recommendation. A party may respond to those objections within **14 days** after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).